# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA ex rel. LEE SHAWN WILLIAMS, | ) ) ) | |
| *Petitioner*, | ) | |
| v. | ) ) | No. 09 C 1183 |
| GUY PIERCE, Warden, Pontiac Correctional Center, | ) ) ) ) | Honorable David H. Coar |
| *Respondent*. | ) ) | |

## MEMORANDUM OPINION AND ORDER

Petitioner Lee Shawn Williams's ("Williams" or "Petitioner") petition for habeas corpus pursuant to 28 U.S.C. § 2254 is before this Court. For the following reasons, the motion is DENIED.

## FACTS[1]

On December 1, 1995, Williams held up a grocery store in Chicago, Illinois, while wearing a mask and a hooded jacket. Omar Shabana and Ismail Farraj, both workers in the store, lay down on the floor when Williams pointed a gun at them. Farraj testified that Williams hit him on the head five or six times, and Shabana at least once, with the gun. Williams ordered

---

[1] Under 28 U.S.C. § 2254(e)(1), state courts' findings of fact are presumptively correct in any federal habeas proceeding. *Summer v. Mata*, 449 U.S. 539, 547 (1981). Petitioner does not challenge the state courts' facts statements with clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1). Therefore, this opinion takes its factual account from *People v. Williams*, No. 1-00-1390, at *1-2 (Ill. App. 2002), affirming Williams's conviction and remanding for resentencing; *People v. Williams*, No. 1-03-3133, Order at *2 (Ill. App. 2005), affirming the trial court's resentencing on remand; and *People v. Williams*, No. 1-06-0908, Order at *2-4 (Ill. App. 2008), affirming denial of Williams's petition for post-conviction relief.

Shabana to open the cash register on threat of being shot. When Shabana complied, Williams said, "that's all you got?" Shabana explained that he paid a lot of bills that day. At this point, Williams was holding the gun to the victim's right temple. The victim directed Williams to a small reserve of money that he kept below the cash register. Williams said "that's all, [expletive deleted]?" Shabana replied, "that's all I got," reiterating that he had paid a lot of bills that day and did not have any more money. Williams uttered an expletive and shot Shabana in the head, killing him.

Williams was charged with first degree murder and armed robbery. Prior to trial, defense counsel filed a motion to suppress Williams's inculpatory statement, on the grounds that the police deprived him of food and water and physically abused him until he agreed to sign the statement. At the suppression hearing, Officer Regina Brown testified that on June 5, 1997, she and her partner Jackie Campbell responded to a call of a disturbance at 310 South Lockwood in Chicago. They arrived to find Williams standing outside the house, his mother yelling that she wanted him gone. When the officers asked Williams if they could take him somewhere, he suggested his grandmother's or aunt's house. After he entered the police vehicle, the officers asked him if he knew anything about Charlie Brown, who was wanted in connection with the murder at the grocery store. Williams said that Charlie Brown was his brother and that he might have information that would clear Charlie Brown's name. Upon request, Williams agreed to speak with detectives about the case at police headquarters.

On cross-examination, Officer Brown admitted that she knew that there was a stop order for a person named Lee Williams, who lived at 310 South Lockwood. However, Brown denied knowing that Williams was the person in the stop order because he introduced himself as Sean Lee Williams.

Williams testified that, on June 2, 1997, Officer Brown told him that "Marcus said you did this murder." Williams replied that he "did not kill anyone because [he] was working." A brief exchange ensued in which Williams denied culpability. The officers then took Williams against his will to the police station. He was placed in a room with a bench and handcuffs attached to the walls. He was later transferred to an interview room in another police station. Williams made the inculpatory statement days later on June 6, 1997. Williams conceded that the officers never placed him in handcuffs.

The trial court denied Williams's suppression motion, stating that it believed Officers Brown and Campbell and found Williams not credible. Williams's statement, which provided that he shot Shabana during the course of the robbery, was read into evidence before the jury.

Also at trial, Sergeant William Woitowich testified that on December 3, 1995, he was assigned to follow up on the December 1 shooting. After reviewing the files, Woitowich went to the scene of the crime and re-canvassed the area in an attempt to locate witnesses. Woitowich eventually focused his attention on an apartment complex at 308-310 South Lockwood. He conducted a computer search of the residents who had previous contact with the police. Williams's name came up. Woitowich ordered a photograph and issued a stop order for Williams. A stop order notifies the police identification department that a person is wanted for questioning, and that a specific investigative unit should be notified if the individual is placed into custody. A stop order is not an arrest warrant.

Officer Campbell testified that she knew "Charlie Brown" was "Lee Williams," but did not know that Petitioner was Charlie Brown or Lee Williams when she and Officer Brown took him to the police station on June 5, 1997. Lieutenant Tom Keough testified that when Brown and Campbell arrived at the station with Williams, the officers told Keough that Williams had

3

information about a two-year-old robbery and murder. Keough placed Williams in an interview room and assigned Detective Dave Weigand to review the case file, which included the stop order and a picture of Williams. Upon discovering that Petitioner was named Lee Williams and was the subject of the stop order, Weigand locked the interview room door and "handcuffed [defendant] or secured him in some manner in that room." Keough testified that "the stop order was issued because . . . the case officers . . . handling the case determined that [Williams] was a suspect."

On October 7, 1999, a jury found Williams guilty on both counts. The court sentenced Williams to concurrent prison terms of 30 years for armed robbery and 100 years for first degree murder. Williams appealed, arguing that his extended-term sentence for murder was unconstitutional under *Apprendi v. New Jersey*, 520 U.S. 466 (2000), and that the trial court failed to provide a statutory basis for his sentence. The Illinois Appellate Court affirmed the conviction but remanded for sentencing, ordering the circuit court to implement consecutive terms and describe the aggravating factors relied upon for its decision. Williams filed a petition for leave to appeal ("PLA") in the Illinois Supreme Court, seeking a new trial or concurrent sentences. The PLA was denied on February 5, 2003. On remand, the trial court, stating its reasons, sentenced Williams to consecutive terms of 70 years' imprisonment for first degree murder and 30 years' for armed robbery. The state appellate court affirmed the sentence. Williams filed a PLA, which was denied on September 29, 2005.

On January 17, 2006, Williams filed a *pro se* postconviction petition pursuant to 725 ILCS 5/122-1, asserting that trial counsel was ineffective for failing to file a motion to quash his arrest and suppress his statements as fruit of an unlawful arrest, and appellate counsel was ineffective for failing to raise the issue on appeal. The Cook County Circuit Court summarily

dismissed the petition on February 10, 2006. Petitioner appealed, raising the same claims. The appellate court affirmed. Williams raised the same claims in his PLA. It was denied on May 29, 2008.

On February 18, 2009, petitioner filed the instant petition for habeas corpus relief. He raises the following claims: (a) his sentence violated his constitutional rights because (i) he received an extended-term sentence; (ii) his indictment did not reference the aggravating factors relied upon to impose his extended-term sentence, and (ii) he was not given notice that the State was seeking such a sentence; (b) trial counsel was ineffective for (i) failing to object to the imposition of the extended-term sentence and (ii) failing to file a motion to quash his arrest and suppress his statement; and (c) appellate counsel was ineffective for failing to raise trial counsel's failure to file motions to quash and suppress. On January 21, 2010, petitioner filed an "amended petition" presenting more case law in support of argument (a).

**STANDARD**

Section 2254 empowers federal district courts to hear petitions for a writ of habeas corpus on behalf of a person in state custody on the ground that he or she is in custody in violation of the Constitution, treaties, or laws of the United States. 28 U.S.C. § 2254(a) (1996); *see Wainwright v. Sykes*, 433 U.S. 72, 77 (1977). Before a federal court can consider the merits of a writ, the petitioner, subject to rare equitable exceptions, must (1) exhaust all available state court remedies; and (2) first present any federal claim in state court. *See* 28 U.S.C. § 2254(c) (1996); *Coleman v. Thompson*, 501 U.S. 722, 731 (1991); *Jones v. Washington*, 15 F.3d 671, 674 (7th Cir. 1994). A federal court may only grant relief if the state court's decision "was contrary to, or involved an unreasonable application of clearly established federal law, as determined by the

5

Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d)(2).

## ANALYSIS

**I.      Extended-term Sentence**

Petitioner contends that his Fourteenth Amendment rights were violated because: (1) an extended-term sentence was imposed; (2) his indictment did not allege the aggravating factors relied upon by the trial court to enhance his sentence; and (3) he did not receive notice that the State would seek an extended-term sentence against him.

Williams's claims apparently allege violations of *Apprendi v. New Jersey*, 530 U.S. 466 (2000).  In *Apprendi*, the Supreme Court elaborated on the requirements of the Fourteenth Amendment's Due Process Clause and the Sixth Amendment's notice and jury trial guarantees as they relate to enhanced sentences.  The Supreme Court concluded that "any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Id.* at 490.  This means that, in jury trials, a judge cannot sentence a defendant beyond the statutory maximum based on facts that have not been alleged in an indictment and placed before the jury. *Id.* at 482-83.  In proceedings determining a defendant's eligibility for capital sentencing, the Sixth Amendment commands that the aggravating circumstances necessary for imposition of the death penalty must also be found by a jury beyond a reasonable doubt. *Ring v. Arizona*, 536 U.S. 584, 609 (2002) (citing *Apprendi*, 530 U.S. at 494 n. 19).

Williams was indicted for first degree murder and armed robbery. A jury found him guilty on both counts. Prior to his trial, Williams waived his right to a jury hearing on his eligibility for the death penalty. The trial court thus assumed the role of fact-finder and determined, beyond a reasonable doubt, that Williams was eligible for death pursuant to 720 ILCS 5/9-1(b)(6)(c), which provides that a defendant may be sentenced to death if he intentionally commits murder during the course of another felony qualifying as "an inherently violent crime," such as armed robbery. The court also found sufficient mitigating factors to preclude a death sentence. Although the court could have sentenced Williams to a term of natural life, 730 ILCS 5/5-8-1(a)(1)(b)(2002), it instead sentenced Williams to 70 years for first degree murder and 30 years for armed robbery. At the time, a term surpassing 60 years for murder could only be imposed upon a finding of "exceptionally brutal or heinous behavior indicative of wanton cruelty." *Id*. The trial court made such a finding upon considering that Williams, unprovoked, shot Shabana execution-style after the robbery was complete, while the victim was apologizing and pleading with Williams to spare him. The appellate court found that the trial court did not abuse its discretion in coming to this conclusion.

On appeal, Petitioner contended that the State failed to prove beyond a reasonable doubt that Williams's behavior was exceptionally brutal and heinous, so as to permit the extended-term sentence. Interpreting this as an *Apprendi* claim, the state appellate court dismissed the legal contention as irrelevant. It reasoned that the trial court had found, beyond a reasonable doubt, that Williams was eligible for the death penalty. This set Williams's maximum penalty at death under 720 ILCS 5/9-1(b)(6). Finding the aggravating factors necessary to impose an extended term of years under 730 ILCS 5/5-8-1 therefore did not increase the statutory maximum faced by

Williams. Consequently, even if the brutal and heinous nature of Williams's conduct was not found beyond a reasonable doubt, no violation of *Apprendi* results.

The state appellate court's holding was neither contrary to nor an unreasonable application of Supreme Court precedent. *Apprendi* is simply inapplicable to Williams's case because the trial court's "brutal and heinous" finding did not increase his sentence above the statutory ceiling. *See Apprendi*, 530 U.S. at 494 n. 19 (circumstances that support a specific sentence within the range authorized by a jury's finding are merely "sentencing factors," not "sentence enhancements" increasing a sentence beyond the statutorily authorized maximum). As the Seventh Circuit observed in another case with a death-eligible defendant, "the trial court's subsequent finding that the murder 'was accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty' did nothing to increase the penalty that defendant was facing. Rather, it simply guided the trial court in fashioning an appropriate sentence that was both specifically authorized by statute and below the prescribed statutory maximum." *White v. Battaglia*, 454 F.3d 705, 707 (7th Cir. 2006) (quoting *People v. Ford,* 761 N.E.2d 735, 739 (Ill. 2001)). In sum, Williams has not shown that the imposition of his extended-term sentence violated his constitutional rights.[2]

To the extent that Williams asserts variations of his *Apprendi* claim for the first time in his habeas petition, these claims are procedurally defaulted in addition to lacking merit. Rather than challenge the trial court's findings, as Williams did on appeal, Williams now complains that his indictment did not allege the aggravating factors considered by the trial court. *Apprendi*

---

[2] On appeal, Williams also argued that the principles of double jeopardy precluded the imposition of his extended term sentence on remand. The appellate court held that, because it had affirmed Williams's conviction and merely remanded for resentencing, double jeopardy did not apply to his case. This ruling does not contradict or unreasonably apply Supreme Court precedent. *See Bozza v. U.S.*, 330 U.S. 160, 166-67 (1947) (double jeopardy does not apply where a correction to an originally invalid sentence results in a higher sentence).

8

governs claims challenging the sufficiency of indictments to support extended-term sentences. However, because the facts underlying Williams's latest *Apprendi* claim differ from those previously considered by Illinois courts, it is barred. *See Lewis v. Sternes*, 390 F.3d 1019, 1025 (7th Cir. 2004) (to gain federal habeas review, a petitioner must "assert his federal claim through one complete round of state-court review, either on direct appeal of his conviction or in post-conviction proceedings") (citing *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999)); *Rodriguez v. Scillia*, 193 F.3d 913, 916 (7th Cir. 1999) (fair presentment requires petitioner to submit both the operative facts and controlling legal principles on which a claim is based) (citing *Picard v. Connor*, 404 U.S. 270, 275 (1971)). Moreover, the claim fails on the merits because, as set forth above, the trial court's "brutal and heinous" findings did not raise Williams's sentence beyond the statutory maximum. As a result, *Apprendi* does not require that they be alleged in an indictment, submitted to a jury, or found beyond a reasonable doubt.

Williams also challenges the constitutionality of his sentence on the grounds that he never received notice that the State intended to seek an enhanced sentence. This claim, again, contemplates the requirements of due process under the Fourteenth Amendment and the notice guarantee of the Sixth Amendment. In short, it is either an *Apprendi* claim premised on different operative facts, or a separate constitutional claim of unknown provenance. Regardless of its legal underpinnings, Williams has failed to raise this claim in any state court. It is thus procedurally defaulted. *See id.*

Even if Williams had exposed his inadequate notice claim to state court review, it fails for the same reasons as its variant claims do, in addition to other grounds. Prior to trial, Williams signed a form entitled "jury waiver for eligibility and penalty phase of capital offense," to apply in the event of a murder conviction. The trial court discussed the death penalty and the

consequences of a jury waiver with Williams when he signed it in the courtroom. (*See* Jan. 13, 2000 Tr. 4:12-24.) In addition, Williams was apprised from the start that he was indicted for first degree murder while committing an armed robbery, making him eligible for the death penalty under 720 ILCS 5/9-1(b)(6)(c). The record confirms that Williams was advised of the potential application of the death penalty prior to trial; at a minimum, his indictment put him on notice of the legal predicates for a death sentence. Williams cannot now claim that he lacked notice of the possibility of being sentenced to a lesser term of years. Nor can he plausibly contend that the Constitution requires notice to defendants of all possible permutations of sentences short of the maximum penalty. *See U.S. v. Williams*, 238 F.3d 871, 877 (7th Cir. 2001) ("[T]he rule of *Apprendi* is not implicated when the actual sentence imposed is less severe than the statutory maximum.") (citing *Apprendi*, 120 S.Ct. at 2361 n. 13).

Williams argues that, because his case was not certified as a death eligible case, he was deprived of the notice and two attorneys required by Illinois Supreme Court Rule 416. Rule 416 was adopted on March 1, 2001; its provisions were not in effect when Williams went to trial in 1999. *See People v. Hickey*, 792 N.E.2d 232, 258 (Ill. 2001) (holding that Illinois Supreme Court rules regarding capital sentences do not apply retroactively). At any rate, a violation of state supreme court rules, absent the implication of some other federal right, is not the kind of grievance addressed by a writ of habeas corpus. Habeas relief is only appropriate when a petitioner is being held in violation of the Constitution or federal law. 28 U.S.C. § 2254(a).

Insofar as Williams alleges a constitutional violation because the State did not timely advise him of its intent to seek the death penalty, his claim cannot succeed. Certainly, the death penalty may not be imposed without notice to a defendant. *See Lankford v. Idaho*, 500 U.S. 110, 127 (1991) (where defendant received no notice that the State sought or the judge contemplated

the death penalty, and was not alerted to the real, life-or-death implications of a sentencing hearing, due process was violated). But procedural due process does not mandate that a defendant be given pretrial notice of a State's intent to seek the death penalty. *See Silagy v. Peters*, 905 F.2d 986, 996-97 (7th Cir. 1990), *cert. denied,* 498 U.S. 1110 (1991). Although Williams in fact received pretrial notice of the capital sentencing phase of his case, it would have been enough, for constitutional purposes, that he receive notice before the separate sentencing hearing on the matter. *See id.* at 996; *Williams v. Chrans*, 945 F.2d 926, 938-39 (7th Cir. 1991); (Jan. 13, 2000 Tr. 4:12-5:10).

Williams's "amended petition," submitted by counsel, contributes to his inadequate notice claim by citing inapplicable laws and cases.[3] It argues that state courts are statutorily required to admonish defendants of the possibility of an extended sentence at guilty plea colloquys. Williams did not plead guilty. The "amended petition" further asserts that, in federal court, a United States attorney must file information describing all previous convictions to be relied upon to increase a sentence, if an enhanced sentence is sought on those grounds. Williams was not tried in federal court, nor was his sentence enhanced on the basis of prior convictions. In short, the "amended petition" adds nothing to Williams's procedurally defaulted and meritless claim.

## II.   Ineffective Assistance of Counsel

Williams asserts that trial counsel was ineffective for failing to (a) object to the imposition of the extended-term sentence, and (b) file a motion to quash his arrest and suppress a

---

[3] Williams's "amended petition" is more accurately labeled a "supplemental petition," seeing as it is not complete in and of itself. Rather, it only adds legal support for Williams's existing claims.

statement he gave to the police. Williams claims that his appellate counsel was ineffective for failing to raise trial counsel's deficient performance on direct appeal.

Williams's contention that counsel was ineffective for failing to object to his enhanced sentence is raised for the first time in his habeas petition. As such, it is procedurally defaulted. *See O'Sullivan*, 526 U.S. at 845; *Lewis*, 390 F.3d at 1025. While Williams raised an ineffective assistance claim in his petition for post-conviction relief, that claim arose from a failure to file certain pre-trial motions, as opposed to any deficient performance at the sentencing stage. As a result, the two claims are not the same for the purposes of procedural default. *See Rodriguez*, 193 F.3d at 916; *Steward v. Gilmore,* 80 F.3d 1205, 1211-12 (7th Cir. 1996) (factual basis for ineffective assistance claim defaulted for lack of fair presentment in state courts, even though other grounds for ineffective assistance were appropriately raised and thus preserved).[4]

Williams did fairly present, in a complete round of state court review, an ineffective assistance of counsel claim based on his trial attorney's failure to file a motion quashing Williams's arrest and suppressing his inculpatory statement, on the grounds that the police lacked probable cause to arrest him. Williams argues that the police only had a stop order, which by itself was insufficient to establish probable cause.

To prevail on an ineffective assistance of counsel claim, a petitioner must show that his counsel was deficient and that this deficiency prejudiced the petitioner. *Strickland v. Washington,* 466 U.S. 668, 687 (1984). With regard to counsel's deficiencies, "[j]udicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689. Courts reviewing claims of ineffective assistance of counsel "must indulge a strong presumption that counsel's

---

[4] In his reply, Williams argues that he should have been issued Miranda warnings when he was first picked up by Officers Brown and Campbell. It is neither relevant nor clear from the record whether trial counsel argued this issue. If Williams submits the point as grounds for ineffective assistance, his claim is defaulted because he has not fairly presented it to any state court, or, for that matter, in his habeas petition.

conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* (internal quotation marks and citations omitted). A showing of prejudice requires a reasonable probability that, but for the attorney's mistakes, the result of the proceeding would have been different. *Id.* at 694.

Williams cannot show that counsel's performance was deficient, or that he suffered prejudice by his attorney's actions. Trial counsel opted to challenge Williams's confession based on involuntariness, rather than unlawful arrest. Counsel filed a motion to suppress Williams's statements and a hearing was held, to no avail. The state appellate court could not say that counsel's decision to forego challenging Williams's statements on Fourth Amendment grounds was objectively unreasonable, in light of the presumption that counsel's choice to proceed on Fifth Amendment grounds reflected sound trial strategy. This conclusion represents a reasonable application of *Strickland*. *See* 466 U.S. at 689; *United States v. Hirschberg*, 988 F.2d 1509, 1513 (7th Cir. 1993) (applying "enormous deference" to strategic decisions by trial counsel).

The state court further found that Williams could not show a reasonable probability that the motion would have been granted. Williams thus fails to satisfy the prejudice prong of *Strickland*. The appellate court noted that probable cause exists "where the facts and circumstances within the officer's knowledge would lead a reasonable person to believe that the person apprehended has committed the offense at issue." *People v. Williams*, No. 1-06-0908, Order at *6-7 (Ill. App. 2008). The court concluded that the probable cause standard was met in Williams's case. To summarize, Williams voluntarily came to the police station after hearing that Charlie Brown was wanted for murder. Identifying himself as "Sean Lee Williams," Petitioner told police officers that "Charlie Brown" was his brother and that he had information

that would clear his brother's name. A detective reviewed a case file and found a stop order with Williams's photograph attached; the stop order said that petitioner's name was Lee Williams, a.k.a. Charlie Brown, and that he was "wanted for questioning in connection" with the 1995 shooting. The officers handling the case had determined that Williams was a suspect.

A reasonable person considering these facts would believe that Williams had committed the crimes of which he sought to exonerate his alias, "Charlie Brown." Because probable cause existed, Williams was not prejudiced by trial counsel's failure to challenge the legality of his arrest. The state appellate court reasonably applied Supreme Court precedent when coming to this conclusion. *See Carroll v. U.S.*, 267 U.S. 132, 162 (1925) (probable cause exists where "the facts and circumstances within [police officers'] knowledge . . . [are] sufficient in themselves to warrant a man of reasonable caution in the belief" that an offense has been committed.); *Knowles v. Mirzayance*, 129 S. Ct. 1411, 1421 (2009) (failing to file a motion because there was nothing to lose in making a certain argument does not constitute ineffective assistance).

Accordingly, Williams cannot show that his appellate counsel's performance was deficient for failing to appeal his trial counsel's decision to proceed on Fifth rather than Fourth Amendment grounds, or that Williams was prejudiced by appellate counsel's omission. Appellate counsel is not constitutionally obliged to argue a meritless claim of trial counsel's ineffectiveness. *See Hubanks v. Frank*, 392 F.3d 926 (7th Cir. 2004). The state court reasonably held that appellate counsel cannot be faulted for failing to raise trial counsel's ineffectiveness because, as discussed above, such a claim would have proven unsuccessful.

### III. Certificate of Appealability

Under Rule 11 of the Rules Governing § 2254 Cases, the Court must consider whether it should issue a Certificate of Appealability when entering a final order adverse to a petitioner. A district court may issue a Certificate only if "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The standard for making a "substantial showing" is whether "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel,* 529 U.S. 473, 484 (2000). If a court denies a petition on procedural grounds, a petitioner must show that both the procedural ruling and the underlying constitutional claim are debatable. *Id.* at 484. The procedural default of Williams's new claims is not up for debate; Williams never presented them to a single state court. Williams has further failed to substantially show that his extended-term sentence violated any of his constitutional rights. Finally, no reasonable jurist can deny that Williams received constitutionally adequate legal representation.

### CONCLUSION

For the foregoing reasons, Williams's Petition for a Writ of Habeas Corpus is DENIED. The Court declines to issue a Certificate of Appealability.

Enter:

/s/ David H. Coar

David H. Coar
United States District Judge

Dated: **May 5, 2010**